UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IDEA PUBLIC CHARTER SCHOOL ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Civil Action No. 04-0493 (RCL) |
| v. ) | |
| ) | |
| ) | |
| THE DISTRICT OF COLUMBIA ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

This matter comes before the court under the Individuals with Disabilities Act, 20 U.S.C. § 1401 et. seq. ("IDEA") and Title 34 of the Code of Federal Regulations, Part 300 on plaintiff's motion for summary judgment ("Pl. Mot."). Defendant filed an opposition to plaintiff's motion for summary judgment ("Def. Mot."). Plaintiff then filed a reply to defendant's opposition to plaintiff's motion for summary judgment ("Pl. Opp'n"). Upon consideration of the filings, the entire record herein and the relevant law, the Court will deny plaintiff's motion for summary judgment, and dismiss the case with prejudice.

**I.     Procedural Posture**

In accordance with section 1415(f) of the Individuals with Disabilities Education Act ("IDEA"), plaintiff initiated an impartial due process hearing before a hearing officer, which was held on January 9, 2004. The Hearing Officer ("HO") in this case rendered a decision and order on February 2, 2004. See Hearing Officer's Determination. Plaintiff then filed a timely

complaint in this Court on March 24, 2004.  See Plaintiff's Complaint ("Compl.").  Plaintiff named both the District of Columbia and Vivian Moore, parent of the child involved, as defendants in the suit.  On April 26, 2004, Vivian Moore filed a Motion to Dismiss as to defendant Moore.  See Defendant Moore's Motion to Dismiss.  On May 21, 2004 this Court granted the Motion to Dismiss as to defendant Moore.  See Court's May 21 Order.  The case then proceeded with the District of Columbia as the sole defendant.  Defendant filed an answer to plaintiff's complaint on June 4, 2004.  See Defendant's Answer.

## II. Background

Plaintiff is a District of Columbia Public Charter School ("Charter School") which is its own Local Educational Agency ("LEA") created by the District of Columbia Public Schools ("DCPS").  (Hearing Officer's Determination ("HO Det.") at 1).  Defendant is the District of Columbia, which, as one of its governmental functions, operates the District of Columbia Public School System. (Compl. ¶ 4).

On May 22, 2003, the parent of thirteen year-old Victor signed a consent for evaluation form for special education services at Ron Brown Middle School.  (HO Det. at 1).  The purpose of requesting the evaluation was to determine whether Victor qualified for a special education as provided for under IDEA.  DCPS failed to complete an evaluation of the student for special education services within the statutory period.  (Id.)  The student subsequently transferred to the Charter School for the 2003-2004 academic school year.  (Id.)  Upon learning of the request for evaluations, the Charter School completed the required evaluations itself.  (Id.)  The evaluations performed by Charter School consisted of a psycho-educational and clinical psychological, in the amount of $1,150.00. (Id.)

On December 3, 2003, the Charter School requested an impartial due process hearing for the cost of conducting the evaluations. (Compl. ¶ 8). The due process hearing was held on January 9, 2004. (Id. at ¶ 9). Hearing Officer H. St. Clair ordered a brief filed by the Counsel for the Charter School on the issue of the applicability of Due Process for controversies between LEAs under 34 C.F.R. § 300.507 when present denial of a free and appropriate public education ("FAPE") is not alleged. (HO Det. at 1). After briefs were received, Hearing Officer St. Clair determined that 34 C.F.R. § 300.507 did not confer subject matter jurisdiction over this matter. (Id. at 1). In making his decision, the hearing officer determined that the purposes of Part B of IDEA are set out at 34 C.F.R. § 300.1, and nowhere among them is protection for an LEA contemplated. (Id. at 2). Additionally, because section 300.507 is set out under "Due Process Procedures for Children and Parents" which is under Subpart E, "Procedural Safeguards," the application of this section was intended for the protection of children and parents only, not an LEA. (Id.) The Hearing Officer then determined that the regulation does extend to an LEA filing for a due process hearing against a parent when there is an allegation of present denial of FAPE. (Id. at 2). The Hearing Officer also determined that since reimbursement is only authorized under 34 C.F.R. § 300.403 for parents to recover the costs of a child's education, reimbursement as requested here is nowhere permitted under the regulations. (Id.)

Plaintiff contends Hearing Officer St. Clair erred on two points. (Compl. ¶ 17). Plaintiff first alleges that St. Clair erred in finding that the subject matter in this case is not within the jurisdiction conferred by 34 C.F.R. § 300.507(a)(1). (Id.) Plaintiff further contends that St. Clair erred in finding that no where under Part B of IDEA are the rights of an LEA protected and that under Subpart E only children and parents were meant to be protected. (Id.)

3

Relying on 34 C.F.R. § 300.507(a)(1), plaintiff asserts that the Hearing Officer did, in fact, have jurisdiction to order DCPS to reimburse Charter School for the costs of the independent evaluation in light of the regulation which allows "[a] parent or a public agency [to] initiate a hearing on any of the matters described in sec. 300.503(a)(1) and (2) (relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child.)" (Id. quoting 34 C.F.R. § 300.507(a)(1)).  As a result, plaintiff contends that Charter School's claim for reimbursement for the costs of the evaluation is a matter related to the evaluation and identification of the student. (Id.)

Plaintiff seeks summary judgment ordering the February 24, 2004 decision of the Hearing Officer be vacated; ordering DCPS to reimburse Charter School for the cost of conducting the independent psycho-educational and clinical psychological evaluations; ordering DCPS to reimburse Charter School for the costs of conducting the independent speech/language evaluation once it is completed; and ordering an award of attorney's fees and costs to the plaintiff. (Pl. Mot. at 7).  Defendant opposes plaintiff's motion for summary judgment on the grounds that Hearing Officer St. Clair's determinations were proper.  (Def. Mot. at 8).  Defendant seeks an order denying plaintiff's motion for summary judgment and ordering the plaintiff's complaint dismissed with prejudice. (Id.)

### III.    Applicable Law

#### A.    Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a

verdict for the non-moving party.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  As with Rule 12(b)(6) motions for dismissal, facts and inferences drawn from those facts must be viewed in the light most favorable to the non-moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment may still be granted, however, if evidence favoring the non-moving party is merely colorable, or is not significantly probative.  Anderson, 477 U.S. at 249-50 (citations omitted).  Once the moving party files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.  For a non-moving party to establish a genuine issue for trial exists, it must do more than simply show there is some metaphysical doubt as to the material facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

  **B.**  **IDEA**

IDEA "confers upon disabled students an enforceable substantive right to public education . . . and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act."  Honig v. John Doe, 484 U.S. 305, 310 (1988).[1]  The goal of IDEA is to ensure that all children are afforded "a free and appropriate public education . . . designed to meet their unique needs and prepare them for employment and independent living."  20 U.S.C. § 1400(d)(1)(A).  In order to receive funds under IDEA, the Act requires school districts to adopt procedures that ensure appropriate educational placement of

---

[1]Honig interprets provisions of the Education of the Handicapped Act, 20 U.S.C. § 1400 et. seq., which was reenacted in 1990 as IDEA.  Law interpreting the Education of the Handicapped Act is applicable to IDEA.  See Bd. Of Trustees of Univ. Of Ala. v. Garrett, 531 U.S. 356, 391 (2001).

disabled students. See 20 U.S.C. § 1413. These plans, known as "individualized education programs," or "IEPs," must include a "statement of the child's present levels of educational performance, . . . a statement of measurable annual goals, [and] a statement of the special education and related service . . . to be provided to the child. . . ." 20 U.S.C. § 1414(d)(1)(A).

In order to determine if a child qualifies as a child with a disability as defined in 20 U.S.C. §§ 1401(3)(A) or 1401(3)(B), "[a] State educational agency, other State agency, or local educational agency shall conduct a full and individual initial evaluation...before the initial provision of special education and related services to a child with a disability under this subsection." 20 U.S.C. § 1414(a)(1)(A). The "agency proposing to conduct [the] initial evaluation...shall obtain an informed consent from the parent of such child before the evaluation is conducted." 20 U.S.C. § 1414(a)(1)(C)(i). After the evaluation, a determination of whether a child has a disability as defined in 20 U.S.C. § 1401(3) "shall be made by a team of qualified professionals and the parent of the child....." 20 U.S.C. § 1414(b)(4)(A).

IDEA grants parents broad procedural rights to enforce the provisions of the Act. See Honig, 484 U.S. at 310. The Act guarantees parents an opportunity to participate in the "identification, evaluation, and educational placement of the child," 20 U.S.C. § 1415(h)(1), and parents who object are entitled to an "impartial due process hearing," §§ 1415(b)(6), (f)(1) at which they have a "right to be accompanied and advised by counsel." § 1415(h)(1). During the due process hearing, "[the school system] shall bear the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the educational needs of the student." 5 D.C. Mun. Regs. § 3022.16. Any party aggrieved by the hearing officer's determination may seek judicial review of the determination in

an appropriate state court or federal district court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2)(A).  The hearing officer who presides is charged with rendering a final decision on the matter.  20 U.S.C. § 1415(i)(1)(A).

### C. Standard of Review

In reviewing administrative decisions under the IDEA, courts will review the records of the administrative proceedings, hear additional evidence at the request of a party, and make a decision based on the preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(B).  The court has broad discretion to grant appropriate relief under IDEA, see Sch. Comm. of Burlington v. Mass. Dept. Of Educ., 471 U.S. 359, 369 (1985), and its standard of review under IDEA is less deferential than that used in the traditional substantial evidence test in ordinary administrative review cases.  See e.g. Kerkham v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988); Kroot v. D.C., 800 F.Supp. 976, 981 (D.D.C. 1992).  However, the district court should not "substitute its own notions of sound educational policy for those of the school authorities."  Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  The court must give "due weight" to the administrative proceedings, but its decision ultimately should be an "independent [one] based on a preponderance of evidence."  Id. at 206-07.

### IV. Analysis

The main issue in this case is whether the Charter School, as an LEA, can unilaterally request an impartial due process hearing as provided under 20 U.S.C. § 1415(f).  This court agrees with the decision of the hearing officer and holds that impartial due process hearings provided for under section 1415(f) of IDEA were contemplated only for the protection of parents and students, and not for disputes between LEAs.  As such, the hearing officer was correct in

determining that he did not have jurisdiction over the claim.

**A. A Local Educational Agency May Not Initiate a Due Process Hearing Against a School District.**

Congress enacted the Individuals with Disabilities Education Act to ensure the availability of a free and appropriate public education to children with disabilities, to ensure the protection of the rights of children with disabilities and their parents, and to assist those responsible in providing an education for these children. See 20 U.S.C. § 1400(d). To ensure that children and their parents are afforded a free and appropriate public education in accordance with this Act, Congress also enacted certain procedural safeguards which shall be established or maintained by any "State educational agency, State agency, or local educational agency that receives assistance" under the Act. § 1415(a). In Hendrick Hudson Central Sch. Dist. v. Rowley, the Supreme Court, which for the first time interpreted the Education of the Handicapped Act (now referred to as IDEA), held the importance of these procedural safeguards "cannot be gainsaid." Rowley, 458 U.S. at 205. Indeed, the underlying goals of IDEA are rooted in the procedure it mandates. See id. at 206. The D.C. Circuit has held that "[t]he underlying assumption of the Act is that to the extent its procedural mechanisms are faithfully employed, handicapped children will be afforded an appropriate education." McKenzie v. Smith, 771 F.2d 1527, 1532 (D.C. Cir. 1985).

A key component of the procedural safeguards provided under the Act is the due process hearing provided for under 20 U.S.C. § 1415(f)(1), which speaks of the right of the parent to initiate the hearing. According to 20 U.S.C. § 1415(f)(1), when a complaint is received under any matter relating to the identification, evaluation, or educational placement of the child, or the

provision of a free and appropriate education to such child, or in a matter related to the placement of a student in an alternate educational setting, "the parents involved in such a complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency...." 20 U.S.C. § 1415(f)(1).

Congress clearly intended the safeguards afforded under section 1415(f) to apply to disputes between parents and the agency responsible for the child's education. The statute presents numerous provisions that permit a parent's involvement in the child's educational plan formation, as well as the ability for a parent to file complaints regarding the child's education. See §§ 1412(a)(6), 1414, 1415(b). These requirements represent "examples of Congress' effort to maximize parental involvement in the education of each handicapped child." Rowley, 458 U.S. at 183 n.6. If in the present case, for example, the parent of Victor wished to initiate the due process hearing regarding DCPS's failure to conduct the requisite evaluations as provided for under § 1415(f), there would be no question as to the jurisdiction of the hearing officer to hear such a case under IDEA. Such an action would be initiated by the parent and would relate to a parent's right regarding the identification and evaluation of the child.

In the present case, however, it is not the parent requesting a due process hearing with the school district, but rather a local educational agency, IDEA Public Charter School. Affording one local educational agency the procedural safeguards of IDEA in order to bring a claim against another was not intended by Congress in enacting IDEA. In asserting its right to initiate a due process hearing, plaintiff relies upon 34 C.F.R. § 300.507(a)(1) and its language that "a parent or public agency may initiate a hearing on any of the matters...(relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the

child).'' (Pl. Mot. at 4). This quoted phrase does not appear in the statutes written by Congress, but rather in a regulation promulgated under the authority of IDEA, 34 C.F.R. § 300.507(a)(1).

Where there seems to be a conflict between a statute and the regulation based upon it, the court should determine if "Congress has directly spoken to the precise question at issue," and if so, "give effect to the unambiguously expressed intent of Congress." <u>Chevron, U.S.A. Inc. v. Natural Res. Def Council, Inc.</u>, 467 U.S. 837, 842-43 (1984). A thorough analysis here in unwarranted as the intent of Congress is clear. The protections in IDEA were established "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free and appropriate public education...." 20 U.S.C. § 1415. The mere fact that the regulation speaks of the right of either a parent or public agency to initiate a hearing does not extend the right to a public agency for any matter. "A regulation which...operates to create a rule out of harmony with the statute is a mere nullity." <u>Soc. Sec. Admin., Baltimore, Md. v. Fed. Labor Relations Auth.</u>, 201 F.3d 465, 471 (D.C. Cir 2000) (quoting: <u>Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue</u>, 297 U.S. 129, 134 (1936)). Instead, here the regulation interprets the right under IDEA for either an LEA or the parent to initiate a due process hearing with each other on a matter relating to the identification, evaluation or educational placement of a child, or the provision of FAPE to the child, rather than to broaden IDEA to the extent argued by plaintiff.

Additionally, as noted in the hearing officer's order (<u>See</u> HO Order at 2), an overview of the structure of the Code of Federal Regulations provides further insight into the intent of the regulations. For example, evidence that IDEA was intended only for the protection of children and parents and not LEAs can be seen from the placement of 34 C.F.R § 300.507, which is set

10

out under "Due Process for Children and Parents," located under Subpart E, "Procedural Safeguards."

In a further analysis of the Code of Federal Regulations on which the plaintiff relies, in Section 300.1 the purposes of the regulations of IDEA are outlined. In explaining the rights afforded under the Act, subsection (b) speaks of ensuring that the "rights of children with disabilities and their parents are protected," but mentions nothing of protecting the rights of other LEAs. 34 C.F.R. § 300.1(b). While subsection (c) does outline the purposes of the regulations as they apply to educational agencies, this application is limited to "assist[ing] States, localities, educational service agencies, and Federal agencies [in providing] for the education of all children with disabilities," not of protecting their rights. § 300.1(c).

In its motion, plaintiff also relies extensively on Yates v. Board of Education, 212 F.Supp. 2d 470 (D. MD, 2002) in asserting the hearing officer's jurisdiction over the complaint and its right to initiate a due process hearing. (Pl. Mot. at 5). In Yates, a Maryland district court interpreted the regulatory text of section 300.507(a)(1) (stating that "a parent or public agency" may initiate a due process hearing) in holding that a local school board had standing to request a hearing before an administrative law judge. Yates, 212 F.Supp. 2d at 474. Because the parents in Yates had reserved the right to pursue a claim against the school board following the board's decision not to place the child in a private school, the court held that the board need not wait for the parents to initiate a hearing. Id. at 472. By allowing the board to initiate the hearing against the parents, the board would be protected in its statutory obligations under IDEA, which would thereby protect the student, should the student remain within the protection of IDEA . Id. at 471-73.

The issues and protections discussed in Yates are quite different than the present case. On a thorough reading of Yates, it is evident that the court does not purport to allow merely any concerned public agency to initiate such a hearing, regardless of its relationship to the identification, evaluation or educational placement of a child. In Yates, the school board requested a due process hearing with the parents of the child who had reserved the right to bring a further suit. In this case, however, the dispute involves neither the child, nor the parent. Instead, since Ms. Moore was dismissed as a defendant, what remains is a public agency bringing suit against the District of Columbia.

While the issues raised in the complaint are real, and the timely evaluation of a child under the provisions of IDEA is vital, the Act provides no form of relief between the present parties. "[T]he IDEA and the regulations promulgated under it contemplate that when disagreements between parents and school boards concerning placement decisions arise, they will be resolved by an [administrative law judge] (subject to judicial review)." Id. at 474. In Yates, the school board did nothing more than "seek its resolution in accordance with the governing statutory and regulatory scheme." Id. The Charter School, unlike the school district in Yates, may not rely on the same statutory or regulatory scheme, as those regulations would provide them no relief. Yates, nor IDEA, nor its regulatory scheme say anything about disagreements between two educational agencies, or the protection of such agencies. See 20 U.S.C. § 1400(d). The hearing officer was correct in determining that he had no jurisdiction over the claim.

**B.     A Local Educational Agency May Not Bring Suit Against the District of Columbia Absent Statutory Permission.**

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced against one of the United States Citizens of another State, or by Citizens or Subjects or any Foreign State." U.S. Const amend. XI. The Eleventh Amendment has long been interpreted under the doctrine of sovereign immunity that, absent its consent, "a State [or District] may not be sued in federal court by one of its own citizens." California v. Deep See Research, Inc., 523 U.S. 491, 501-02 (1998); See also Hans v. Louisiana, 134 U.S. 1, 10 (1890); Edelman v. Jordan, 415 U.S. 651, 663 (1974); Duhne v. New Jersey, 251 U.S. 311 (1920). Additionally, Congress may abrogate a State's immunity under the Eleventh Amendment in "its power to enforce the Fourteenth Amendment – an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). In abrogating a State's immunity, Congress's intention in doing so must be "unmistakably clear in the language of the statute." Dellmuth v. Muth, 491 U.S. 223, 230 (1989) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S.234, 242 (1976)).

In 1990, following the decision in Dellmuth v. Muth in which the Court found that Congress's intent in abrogating a State's immunity under a previous version of the Handicapped Act (now IDEA) was not clear, Congress enacted Section 1403 of IDEA. According to Section 1403, "[a] State shall not be immune under the Eleventh Amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter." 20 U.S.C. § 1403. While at first glance Section 1403 of IDEA would seem to indicate an intention by Congress to allow the present suit, this section must be interpreted in light of the entire Act. It is evident that Congress did not intend, in enacting this provision, to create a private right of action under IDEA for all interested bodies.

"To demonstrate a private right of action under a federal statute against any party, public or private, a plaintiff bears a heavy burden of showing that Congress 'affirmatively or specifically contemplated private enforcement when it passed the relevant statute.'" Edwards v. District of Columbia, 628 F.Supp. 333, 339 (D.C. Cir. 1985) (quoting Samuels v. District of Columbia, 770 F.2d 184, 194 (D.C. Cir. 1985)).  The intent of Congress in enacting a private right of action is key.  See Edwards, 628 F.Supp. at 339.  In determining this intent, Section 1403 abrogating a State's sovereign immunity under the Act must be construed in pari materia with the entire title. "It is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute...and give to it such a construction as will carry into execution the will of the Legislature...according to its true intent and meaning." Brown v. Duchesne, 60 U.S. 183, 194 (1856); See also Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 568 (1995).  On a reading of the entire Act, it is evident that in enacting section 1403, as mentioned above, Congress wished only to protect a parent's right under the Act, which includes its right to bring suit, without mentioning the same rights extended to an LEA to bring suit against another LEA, State educational agency, State or District.

As previously mentioned, the general purposes of the Act, as outlined in section 1400(d), speak of the rights and protections afforded the children and parents.  The Act is intended to both provide children with a free and appropriate public education, while protecting the rights of children and their parents in the decision making related to this education.  See 20 U.S.C. §§ 1400(d), 1415(f).  As a result, section 1403 must be viewed in light of the entire Act.  Congress did not intend to create a private right of action for public agencies to sue State or District School

Boards.  Without statutory protection or consent by the District, a suit against the District is barred under the doctrine of sovereign immunity.  See Hans, 134 U.S. at 10.  As such, permitting the present case to proceed would violate the District's right to sovereign immunity.

**C.    The Charter School Has Other Procedural Options To Recoup the Costs of the Evaluation.**

Through this opinion, this Court by no means wishes to validate or affirm the actions of the school district in failing to properly evaluate a student under its control.  IDEA was enacted to guarantee disabled children the right to a free and appropriate public education.  See 20 U.S.C. § 1400(c).  Identifying a child as one needing a special education is the first step in providing this right, and can only be accomplished through a proper evaluation.  See 20 U.S.C. § 1414(a).  A failure to evaluate a child in a timely manner is a failure to comply with the procedural steps outlined under IDEA and its regulatory body, and accordingly is a failure to provide the child with his or her right to a free and appropriate public education.  There is no question that a school district that fails to comply with these procedural mandates must be held accountable.  This must be done, however, in accordance with the regulatory scheme already in place, and following the intent of Congress.

As mentioned previously, Congress enacted the provisions of IDEA in order to protect the procedural rights of children and their parents.  According to the filings, the parent of Victor filed a consent for evaluation form in May 2003.  Under the D.C. Code at the time, the school district

had sixty (60) days in which to evaluate the student. [2]  (See Pl. Opp'n Ex. 1 for D.C. Code § 38-2501 legislative history).  Accordingly, the time period for DCPS to complete the evaluation expired prior to Victor's enrollment in the Charter School in September 2003.  If the parent of Victor had arranged and paid for an independent evaluation when the DCPS failed to provide one, the parent's reimbursement for the evaluation under the Act would certainly be actionable.  According to the Supreme Court, Section 1415(b) of IDEA "entitles parents 'to examine all relevant records with respect to the identification, evaluation, and educational placement of the child,' *to obtain an independent educational evaluation of the child*, to notice any decision to initiate or change the identification, evaluation, or educational placement of the child, and to present complaints with respect to any of the above." Burlington, 471 U.S. at 368 (emphasis added).  In order to obtain reimbursement for an independent evaluation, a parent need only show that the child was entitled to coverage under IDEA, but was deprived a special education under the Act.  See Kattan v. District of Columbia, 691 F.Supp. 1539 (D.C. Cir. 1988).  By proving that the District failed to complete the requisite evaluations under the Act, the parent would certainly be able to assert that Victor was denied a FAPE.

The Charter School may not act on behalf of the parents to recover the costs of the evaluation.  Instead, the Charter School must follow current procedures for reimbursement

---

[2] D.C. Code § 38-2501 was amended on November 13, 2003.  Under the provision in effect at the time of Victor's evaluation, DCPS had sixty (60) days in which to assess or evaluate the student, and sixty (60) days after the assessment or evaluation in which to place the student in an appropriate charter, public, private, or residential placement. Under the present version of the code, the school district has one hundred twenty (120) days in which to evaluate and place the student.  The current time line does not separate evaluation from placement. (See See Pl. Opp'n Ex. 1 for D.C. Code § 38-2501 legislative history).

between the Charter School and DCPS if such procedures exist. If not, the Charter School's other option is to invoice the parent of Victor for the costs of the independent evaluation, whereby the parent of Victor may then initiate an impartial due process hearing pursuant to 20 U.S.C § 1415(f) to recover the costs of the evaluation from DCPS.

**V.    Conclusion**

The Hearing Officer properly found that he did not have jurisdiction over the subject matter of the case pursuant to 34 C.F.R. § 300.507(a)(1). IDEA was enacted for the protection of children and their parents, and does not provide a private right of action for one LEA against another. For these reasons, plaintiff's motion for Summary Judgment will be DENIED, and the complaint will be dismissed with prejudice. Furthermore, plaintiff is not entitled to reimbursement for the costs of the evaluating Victor, and plaintiff's request for an award of attorney's fees, costs and reimbursement for additional evaluations is denied.

A separate Order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, June 21, 2005.